UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
KEVIN JARED ROSENBERG, in his individual capacity,
and in his capacity as a putative plaintiff class representative
on behalf of all other similarly situated federal student loan
borrowers under the Federal Family Education Loan Program,

<div align="center">Plaintiffs,</div>

    -against-                                 Case No.  22-cv-07567

DEUTSCHE BANK ELT SLC TRUST, in its individual
capacity, and in its capacity as a putative defendant class
representative on behalf of all other similarly situated           COMPLAINT
owners and/or holders of legal title to, or beneficial
interests in, federal student loans under the Federal Family
Education Loan Program;

DEUTSCHE BANK TRUST COMPANY AMERICAS,
in its individual capacity, and in its capacity as a putative
defendant class representative on behalf of all other
similarly situated (a) owners and/or holders of legal title
to, or beneficial interests in, federal student loans under
the Federal Family Education Loan Program and/or
(b) trustees of student loan asset-backed securitization
trusts that are owners and/or holders of legal title to, or
beneficial interests in, federal student loans under the
Federal Family Education Loan Program; and

DEUTSCHE BANK NATIONAL TRUST COMPANY,
in its individual capacity, and in its capacity as a putative
defendant class representative on behalf of all other
similarly situated (a) owners and/or holders of legal title
to, or beneficial interests in, federal student loans under
the Federal Family Education Loan Program and/or
(b) administrators for and/or agents of student loan asset-
backed securitization trusts (and/or their trustees) in the
collection of federal student loans under the Federal
Family Education Loan Program,

<div align="center">Defendants.</div>
------------------------------------------------------------------------x

Plaintiffs, by and through their undersigned counsel, respectfully submit this Complaint in support of the relief requested on their causes of action herein against Defendants and, in connection therewith, Plaintiffs respectfully allege as follows:

## THE PARTIES, JURISDICTION AND VENUE

1. Pursuant to federal government records ("DOE Records") maintained by the United States Department of Education ("DOE"), Kevin Jared Rosenberg ("Plaintiff" or "Kevin") is a federal student loan borrower ("FFEL Borrower") under a federal student loan contract ("FFEL Loan Contract") governed by Title IV of the Federal Family Education Loan Program ("FFELP"), see 20 U.S.C. 1070, et seq. Pursuant to DOE Records, Kevin resides in the Southern District of New York.

2. As set forth herein, Kevin is suing, inter alia, not only to enforce his individual rights in his individual capacity, as an individual FFEL Borrower under his FFEL Loan Contract, but also as a putative plaintiff class representative to enforce the rights of all other similarly situated persons as FFEL Borrowers under their FFEL Loan Contracts.

3. Pursuant to DOE Records, Defendant Deutsche Bank ELT SLC Trust ("DB Trust") is an owner and/or holder of legal title to, or beneficial interests in, Kevin's FFEL Loan Contract ("DB Trust"). Upon information and belief, the DB Trust is a Delaware statutory trust whose headquarters or principal place of business is located in the Southern District of New York at 60 Wall Street, New York, New York. Upon information and belief, the DB Trust is a special purpose entity, created to be an asset-backed securitization trust for the purpose of acting as an owner and/or holder of legal title to, or beneficial interests in, a pool or group of similar FFEL Loan Contracts.

4.      As set forth herein, DB Trust is being sued, inter alia, not only in its individual capacity for its liability to Kevin by virtue of the status of the DB Trust as an owner and/or holder of legal title to, or beneficial interests in, Kevin's FFEL Loan Contract - - as well as for the DB Trust's liability to all other similarly situated FFEL Borrowers under their FFEL Loan Contracts, by virtue of the status of the DB Trust as an owner and/or holder of legal title to, or beneficial interests in, those FFEL Loan Contracts - - but also as a putative defendant class representative on behalf of all other similarly situated owners and/or holders of legal title to, or beneficial interests in, all FFEL Loan Contracts.

5.      Upon information and belief, and pursuant to the requirements of the federal Higher Education Act of 1965 as amended ("HEA"), Defendant Deutsche Bank Trust Company Americas ("DB Trustee") is an owner and/or holder of legal title to, or beneficial interests in, Kevin's FFEL Loan Contract - - pursuant to the status of the DB Trustee as a DOE-approved "eligible lender trustee" that is legally required to administer, operate, and manage the DB Trust in compliance with all applicable statutory provisions in, and all applicable DOE regulations promulgated under, the HEA.  Upon information and belief, the DB Trustee is a national banking association whose headquarters or principal place of business is located in the Southern District of New York at 60 Wall Street, New York, New York.

6.      As set forth herein, DB Trustee is being sued, inter alia, not only in its individual capacity for its liability to Kevin by virtue of the status of the DB Trustee as an owner and/or holder of legal title to, or beneficial interests in, Kevin's FFEL Loan Contract (and/or by virtue of the status of the DB Trustee as an "eligible lender trustee" of the DB Trust) - - as well as for the DB Trustee's liability to all other similarly situated FFEL

Borrowers under their FFEL Loan Contracts, by virtue of the status of the DB Trustee as

an owner and/or holder of legal title to, or beneficial interests in, those FFEL Loan

Contracts (and/or by virtue of the status of DB Trustee as an "eligible lender trustee" of

the DB Trust for those FFEL Loan Contracts) - - but also as a putative defendant class

representative on behalf of (a) all other similarly situated owners and/or holders of legal

title to, or beneficial interests in, all FFEL Loan Contracts and/or (b) all other trustees of

student loan asset-backed securitization trusts that are owners and/or holders of legal title

to, or beneficial interests in, all FFEL Loan Contracts.

7.      Upon information and belief, Defendant Deutsche Bank National Trust Company

("DBNTC") is (a) an owner and/or holder of legal title to, or beneficial interests in,

Kevin's FFEL Loan Contract and/or (b) an administrator for and/or agent of the DB Trust

(and/or the DB Trustee) in the collection of sums claimed to be owed under Kevin's

FFEL Loan Contract.  Upon information and belief, DBNTC is a national banking

association whose headquarters or principal place of business is located in the Southern

District of New York at 60 Wall Street, New York, New York.

8.      As set forth herein, DBNTC is being sued, inter alia, not only in its individual

capacity for its liability to Kevin involving Kevin's FFEL Loan Contract - - as well as for

DBNTC's liability to all other similarly situated FFEL Borrowers under their FFEL Loan

Contracts, by virtue of the status of DBNTC as an owner and/or holder of legal title to, or

beneficial interests in, those FFEL Loan Contracts (and/or by virtue of the status of

DBNTC as an administrator for and/or agent of the DB Trust and/or the DB Trustee in

the collection of sums claimed to be owed under those FFEL Loan Contracts) - - but also

as a putative defendant class representative on behalf of (a) all other similarly situated

owners and/or holders of legal title to, or beneficial interests in, all FFEL Loan Contracts and/or (b) all other administrators for and/or agents of student loan asset-backed securitization trusts (and/or their trustees) in the collection of sums claimed to be owed under all FFEL Loan Contracts.

9.      Pursuant to 28 U.S.C. 1331, the Court has subject matter jurisdiction over this action because all of Plaintiffs' causes of action are based upon, inter alia, federally-mandated standards of conduct, set forth in the congressionally-enacted HEA statute, which require, inter alia, that the same terms, conditions, and benefits shall apply to all federal student loans under both the Federal Family Education Loan Program and the William D. Ford Direct Federal Loan Program.

10.      Pursuant to 28 U.S.C. 1331, the Court also has subject matter jurisdiction over those causes of action based upon Plaintiffs' federally-based rights under the Fair Debt Collection Practices Act.

11.      Pursuant to 28 U.S.C. 1367, the Court also has supplemental subject matter jurisdiction over the non-federal causes of action because such non-federal causes of action are based upon, inter alia, federally-mandated standards of conduct, set forth in the congressionally-enacted HEA statute, which require, inter alia, that the same terms, conditions, and benefits shall apply to all federal student loans under both the Federal Family Education Loan Program and the William D. Ford Direct Federal Loan Program and, by virtue thereof, such non-federal causes of action are sufficiently "related" to the federally-based causes of action, such that the non-federal causes of action form part of "the same case or controversy" under Article III of the United States Constitution.

12.     Pursuant to 28 U.S.C. 1391, venue over this action is proper in the Southern

District of New York because, inter alia, Defendants' headquarters or principal place of

business is located in this judicial district and/or a substantial part of the events or

omissions giving rise to the causes of action took place in this judicial district.

## FACTS COMMON TO ALL CAUSES OF ACTION

### A. The Federal Student Loan Debt On Kevin's FFEL Loan Contract.

13.     Pursuant to DOE Records, Kevin obtained federal student loan financing under

the FFEL Program, during approximately 1993-1996, to pay for his college education at

the University of Arizona.  In 1996, Kevin obtained a Bachelor of Arts degree in history.

14.     Pursuant to DOE Records, after graduating from the University of Arizona, Kevin

served in the United States Navy, on active duty, during approximately 1996-2001.

15.     Pursuant to DOE Records, Kevin obtained federal student loan financing under

the FFEL Program, during approximately 2001-2004, to pay for his graduate education at

the Benjamin N. Cardozo School of Law in New York.  Kevin began attending law

school in August 2001 and graduated in December 2004.

16.     Pursuant to DOE Records, during law school, Kevin returned to active military

duty in 2003 for approximately six months.

17.     Pursuant to DOE Records, shortly after graduating from law school, Kevin

entered into a consolidated FFEL Loan Contract, on or about April 22, 2005, pursuant to

which Kevin's prior federal student loans were consolidated into one new loan in the

principal amount of $116,464.75.

18.     Pursuant to DOE Records, as of November 19, 2019, the outstanding balance on Kevin's consolidated FFEL Loan Contract had increased to $221,385.49, plus additional interest accruing thereafter.

19.     On March 12, 2018, Kevin filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Case").

20.     On June 18, 2018, Kevin filed an adversary proceeding lawsuit, as part of his Bankruptcy Case, seeking to obtain a determination that the unsecured debt under his consolidated FFEL Loan Contract should be bankruptcy-discharged on the ground of undue hardship.

21.     On January 7, 2020, The Honorable Cecilia G. Morris, as the Chief United States Bankruptcy Judge of the United States Bankruptcy Court for the Southern District of New York, issued a pre-trial, summary judgment decision, determining that the unsecured debt under Kevin's consolidated FFEL Loan Contract would be treated as bankruptcy-discharged on the ground of undue hardship.

22.     However, on September 29, 2021, The Honorable Philip M. Halpern, as a United States District Judge empowered to act as an appellate judge on a bankruptcy appeal, issued a decision reversing the Bankruptcy Court's ruling, pursuant to which (a) the unsecured debt under Kevin's consolidated FFEL Loan Contract is not treated as bankruptcy-discharged on the ground of undue hardship and (b) the adversary proceeding lawsuit was remanded to the Bankruptcy Court for further proceedings, such as a trial on disputed facts involving the undue hardship issue for a bankruptcy-discharge.

23.     After remand of the adversary proceeding lawsuit to the Bankruptcy Court, additional discovery and additional pre-trial proceedings have taken place, and there is

unresolved motion practice pending before the Bankruptcy Court. As a result, no trial date has yet been fixed to adjudicate the disputed facts involving the undue hardship issue for a bankruptcy discharge.

24.     Thus, by virtue of the decision on the above-referenced bankruptcy appeal, Kevin continues to owe, according to the DOE's records, an unsecured debt under his consolidated FFEL Loan Contract, as of November 19, 2019, of $221,385.49, plus additional interest accruing thereafter.

**B. Pursuant To Federal Legislation Enacted In The Early 1990's, Congress Has Adopted Statutory Parity Provisions In The HEA Mandating That The Same Terms, Conditions, And Benefits Shall Apply To All Federal Student Loans Under The Federal Family Education Loan Program And The William D. Ford Federal Direct Loan Program.**

25.     In the early 1990's, Congress amended the HEA to create the William D. Ford Federal Direct Loan Program ("Direct Loan Program") as an alternative type of federal student loan to be available to federal student loan borrowers, in addition to the preexisting federal student loans available under the Federal Family Education Loan Program ("FFEL Loan Program"). Prior to the early 1990's, the FFEL Loan Program had been known as the "Guaranteed Student Loan Program."

26.     When Congress, in the early 1990's, amended the HEA and created the Direct Loan Program, Congress also adopted statutory parity provisions mandating that the same terms, conditions, and benefits shall apply to all federal student loans under the FFEL Loan Program and the Direct Loan Program.

27.     The statutory parity provisions governing the FFEL Loan Program and the Direct Loan Program, which Congress enacted in the early 1990's, have thereafter been updated and amended, from time to time, so as to be consistent with the ongoing modernization

and expansion of federal student loan programs.  Today, the leading statutory parity provision in the HEA, mandating that the same terms, conditions, and benefits shall apply to all federal student loans under the FFEL Loan Program and the Direct Loan Program, is codified at **20 U.S.C. 1087e(a)(1)-(2),** stating as follows:

> "20 U.S.C. 1087e – Terms and conditions of loans

> (a)  IN GENERAL
> (1)  **PARALLEL** TERMS, CONDITIONS, **BENEFITS**, AND AMOUNTS

> Unless otherwise specified in this part, loans made to borrowers under this part [Direct Loan Program] **shall have the same terms, conditions, and benefits**, and be available in the same amounts, as loans made to borrowers, and first disbursed on June 30, 2010, under sections 1078, 1078-2, 1078-3, and 1078-8 of this title [FFEL Loan Program].

> (2)  DESIGNATION OF LOANS

> Loans made to borrowers under this part [Direct Loan Program] that, except as otherwise specified in this part, **have the same terms, conditions, and benefits** as loans made to borrowers under –

> (A)  section 1078 of this title [FFEL Loan Program] shall be known as "Federal Direct Stafford Loans";
> (B)  section 1078-2 of this title [FFEL Loan Program] shall be known as "Federal Direct PLUS Loans";
> (C)  section 1078-3 of this title [FFEL Loan Program] shall be known as "Federal Direct Consolidation Loans'; and
> (D)  section 1078-8 of this title [FFEL Loan Program] shall be known as "Federal Direct Unsubsidized Stafford Loans".
> [emphasis added]

28.      In addition, when Congress amended the HEA and created the Direct Loan Program in the early 1990's, Congress also adopted another statutory parity provision similarly directing that the same terms, conditions, and benefits shall apply to all federal student loans under the FFEL Loan Program and the Direct Loan Program.

See **20 U.S.C. 1087a(b)(1)-(2),** stating as follows:

> "20 U.S.C. 1087a – Program authority.

(a)  IN GENERAL

There are hereby made available, in accordance with the provisions of this part, such sums as may be necessary (1) to make loans to all eligible students (and the eligible parents of such students) in attendance at participating institutions of higher education selected by the [DOE] Secretary, to enable such students to pursue their courses of study at such institutions during the period beginning July 1, 1994; and (2) for purchasing loans under section 1087i-1 of this title. Loans made under this part shall be made by participating institutions, or consortia thereof, that have agreements with the [DOE] Secretary to originate loans, or by alternative originators designated by the [DOE] Secretary to make loans for students in attendance at participating institutions (and their parents).

(b) DESIGNATION

(1) PROGRAM

The program established under this part shall be referred to as the "William D. Ford Federal Direct Loan Program".

(2) DIRECT LOANS

Notwithstanding any other provision of this part, loans made to borrowers under this part that, except as otherwise specified in this part, **have the same terms, conditions, and benefits as loans made to borrowers under section 1078 of this title [FFEL Loan Program],** shall be known as "Federal Direct Stafford/Ford Loans". [emphasis added]

29.     As the United States Court of Appeals stated two years ago, when addressing the

parallel and intertwined nature of the FFEL Loan Program and the Direct Loan Program:

"Congress enacted the Education Act [the federal Higher Education Act of 1965, 20 U.S.C. 1001 et seq.] in order 'to keep the college door open to all students of ability, regardless of socioeconomic background' [cit. pm.]. **To that end, the Act established two federal student loan programs that are designed to help every student afford the college or trade school of his or her choice**:

(i)  the Direct Loan Program, under which the Department of Education (the "DOE") lends federal taxpayer dollars directly

10

to student borrowers, see 20 U.S.C. 1087a et seq.; and

(ii) the Federal Family Education Loan Program (the "Indirect Loan Program"), under which the federal government guarantees privately funded loans to student borrowers, see 20 U.S.C. 1071 et seq.

The federal government does not directly administer these loan programs. The DOE contracts with third parties like Navient to administer and service loans under the Direct Loan Program and imposes contractual requirements that govern what servicers may do acting on the DOE's behalf.

**For both Direct Loan Program and Indirect Loan Program loans, the DOE has promulgated comprehensive regulations that control the student loan process**, including the types of charges that are permitted, see 34 C.F.R. 682.202; the kinds of repayment plans that are available, see [34 C.F.R.] 682.209, 685.208; and the ways in which those plans can be restructured, see [34 C.F.R.] 682.210-11, [34 C.F.R.] 685.204-05."   [emphasis added]

*Commonwealth of Pennsylvania v. Navient Corp.,* 967 F.3d 273, 277-78 (3d Cir. 2020);

*accord Nelson v. Great Lakes Educational Loan Services, Inc.*, 928 F.3d 639, 643 (7th Cir. 2019) ("In 2010, Congress ordered a halt in new FFELP loans and transitioned to a "Direct Loan" program, in which the United States serves as the lender and contracts with non-governmental entities to service loans issued by the Department. 20 U.S.C. 1071(d); see also Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111-152, [section] 2201 et seq., 124 Stat. 1029, 1074. **Federal Direct Loans "have the same terms, conditions, and benefits" as those issued under the FFELP. 20 U.S.C. 1087e(a)(1)**") (emphasis added).

30.     Indeed, the United States Court of Appeals has ruled that, by enacting the statutory parity provisions in the HEA requiring that all federal student loans under the FFEL Loan Program and the Direct Loan Program "shall have the same terms, conditions, and benefits", it is clear that (a) "**Congress created a policy of inter-**

**program uniformity**" between the FFEL Loan Program and the Direct Loan Program

and (b) "**Congress's instructions to the DOE on how to implement the student loan**

**statutes carry this unmistakable command: Establish a set of rules that will apply**

**across the board**."  See *Chae v. SLM Corp.*, 593 F.3d 936, 944-45 (9th Cir. 2010).

> **C. During The Covid-Emergency, The Trump Administration
> And The Biden Administration Have Both Provided "Payment
> Pause" Benefits And "No-Interest Accrual" Benefits To Federal
> Student Loan Borrowers, Covering A Covid-Emergency Period
> Of March 13, 2020 To December 31, 2022.**

> **However, Unlike DOE Which Has Provided These "Payment Pause"
> Benefits And "No-Interest Accrual" Benefits Since March 13, 2020
> To FFEL Borrowers Whose Federal Student Loan Contracts Are
> Owned/Held By DOE, Defendants Have Violated The Federally
> Mandated Parity Provisions In The HEA By Not Providing These
> Same "Payment Pause" Benefits And "No-Interest Accrual" Benefits
> To FFEL Borrowers Whose Federal Student Loan Contracts Are
> Owned/Held By Defendants And Guaranteed By DOE.**

> **Congress Never Intended Its Federally Mandated Parity Provisions
> In The HEA To Be Interpreted In A Manner Where, During A
> National Emergency Like Covid, The Federal Government, Acting
> On Behalf Of American Taxpayers, Receives No Payment On Federal
> Student Loans Owned/Held By DOE - - But Wall Street Securitization
> Trusts And Commercial Banks Are "Exempted" From The National
> Emergency And Continue To Receive, During The National Emergency,
> Billions Of Dollars On Federal Student Loans Guaranteed By DOE.**

31.    On March 20, 2020, the Trump Administration invoked The Higher Education

Relief Opportunities for Students Act of 2003, which is codified in an amendment to the

HEA at 20 U.S.C. 1098aa-1098ee ("2003 Heroes Amendment"), as the basis for

according covid-emergency benefits to federal student loan borrowers, in the form of

(a) "payment pause benefits" mandating that, effective March 13, 2020 and continuing

until March 27, 2020, federal student loan borrowers shall not be obligated to make any

federal student loan payments and (b) "no-interest accrual" benefits mandating that,

effective March 13, 2020 and continuing until March 27, 2020, no interest shall accrue on federal student loans.

32.     On March 27, 2020, Congress itself directly authorized an extension of these "payment pause benefits" and "no-interest accrual" benefits to federal student loan borrowers, effective March 27, 2020 and continuing until October 1, 2020.

33.     Thereafter, on several occasions, both the Trump Administration and the Biden Administration have invoked the 2003 Heroes Amendment to the HEA as the basis for continuing to extend these "payment pause" benefits and "no-interest accrual" benefits to federal student loan borrowers, effective October 1, 2020 and continuing until December 31, 2022.

34.     The federal government itself, acting through the DOE, is the actual legal owner (and actual legal holder) of all ownership rights to (a) all federal student loans under the Direct Loan Program and (b) all federal student loans under the FFELP Loan Program as to which the FFELP Loan Contracts of FFEL Borrowers have been transferred or assigned to DOE.  This category of federal student loans under the FFELP Loan Program, as to which the FFELP Loan Contracts of FFEL Borrowers have been transferred or assigned to DOE, has been generally referred to as "DOE-Held FFEL Loan Contracts."

35.     There also is a category of federal student loans under the FFELP Loan Program, as to which (a) non-federal government entities are the owners and/or holders of legal title to, or beneficial interests in, the FFELP Loan Contracts of FFEL Borrowers and (b) the federal government, through DOE, "insures" or "guarantees" the payment of federal student loan debt under the FFELP Loan Contracts of FFELP Borrowers. This category of federal student loans under the FFELP Loan Program, as to which

(a) non-federal government entities are the owners and/or holders of legal title to, or beneficial interests in, the FFELP Loan Contracts of FFEL Borrowers and (b) the federal government, through DOE, "insures" or "guarantees" the payment of federal student loan debt under the FFELP Loan Contracts of FFELP Borrowers, has been generally referred to as "DOE-Guaranteed FFEL Loan Contracts."

36.     Pursuant to the events set forth above, and effective March 13, 2020 continuing until December 31, 2022, all DOE-Held FFEL Loan Contracts, just like all federal student loan contracts under the Direct Loan Program that are also owned and held by the DOE, have all been accorded the covid-emergency "payment pause" benefits and the "no-interest accrual" benefits.

37.     Since non-federal government entities are the actual owners and/or holders of legal title to and/or beneficial interests in the DOE-Guaranteed FFEL Loan Contracts, these non-federal government entities have ownership-related legal duties under the HEA (and other applicable federal law and state law), as well as ownership-related contractual obligations under the FFELP Loan Contracts of their FFEL Borrowers, to comply with **the statutory parity provisions in the HEA** mandating that all holders of ownership-interests in all DOE-Guaranteed FFEL Loan Contracts must accord the same covid-emergency "payment pause" benefits and "no-interest accrual" benefits to their FFEL Borrowers under their DOE-Guaranteed FFEL Loan Contracts - - in the same manner as the federal government, as the holder of all ownership interests in the DOE-Held FFEL Loan Contracts, has accorded such covid-emergency "payment pause" benefits and "no-interest accrual" benefits to all federal student loan borrowers under their DOE-Held FFEL Loan Contracts.

38.     However, unlike the federal government (which has accorded the same covid-emergency "payment pause" benefits and "no-interest accrual" benefits to all federal student loan borrowers whose federal student loan contracts are owned by the federal government - - such as all federal student loan contracts under the Direct Loan Program and all federal student loan contracts of FFEL Borrowers under the DOE-Held FFEL Loan Contracts - - in compliance with the statutory parity provisions in the HEA directing the federal government, in its capacity as an owner of federal student loan contracts, to accord the same federal student loan benefits to all of its federal student loan borrowers under the Direct Loan Program and the FFEL Loan Program) - - the non-federal government entities that are the actual owners and/or holders of legal title to, or beneficial interests in, their DOE-Guaranteed FFEL Loan Contracts:

(a) have violated the statutory parity provisions in the HEA involving their ownership-related legal duties to their FFEL Borrowers under their DOE-Guaranteed FFEL Loan Contracts;

(b) have not accorded the covid-emergency "payment pause" benefits and "no-interest accrual" benefits to their FFEL Borrowers under their DOE-Guaranteed FFEL Loan Contracts; and

(c) have illegally collected since March 13, 2020, upon information and belief, **billions of dollars** in federal student loan payments from their FFEL Borrowers under their DOE-Guaranteed FFEL Loan Contracts.

39.     Upon information and belief, there are at least five million FFEL Borrowers whose federal student loan contracts are owned and/or held by non-federal government entities having legal title to, or beneficial interests in, their DOE-Guaranteed FFEL Loan Contracts - - pursuant to which, upon information and belief, an aggregate sum of at least $138 billion is owed by these FFEL Borrowers under their DOE-Guaranteed FFEL Loan

Contracts to these non-federal government entities.

40.     As set forth herein, these non-federal government entities, like Defendants, are Wall Street securitization trusts and commercial banks that are the owners and/or holders of these DOE-Guaranteed FFEL Loan Contracts.

41.     Indeed, unlike the Trump Administration and the Biden Administration which have both provided the "payment pause" benefits and "no-interest accrual" benefits to federal student loan borrowers since March 13, 2020 - - such as providing such "payment pause" benefits and "no-interest accrual" benefits to FFEL Borrowers whose federal student loan contracts are owned/held by DOE - - Defendants (and other Wall Street securitization trusts and commercial banks) have violated the federally mandated parity provisions in the HEA by not providing these same "payment pause" benefits and "no-interest accrual" benefits to FFEL Borrowers whose federal student loan contracts are owned/held by Defendants (and other Wall Street securitization trusts and commercial banks) and guaranteed by DOE (i.e. the DOE-Guaranteed FFEL Loan Contracts).

42.     Congress never intended its federally mandated parity provisions in the HEA to be interpreted in a manner where, during a national emergency like Covid, **the federal government, acting on behalf of American taxpayers, receives no payment on federal student loans owned/held by DOE** - - but Defendants (and other Wall Street securitization trusts and commercial banks) are "exempted" from the national emergency and continue to receive, during the national emergency, **billions of dollars on federal student loans guaranteed by DOE (i.e. the DOE-Guaranteed FFEL Loan Contracts)**.

**D. Plaintiff Class Allegations**.

43.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP 23"),

Plaintiff is suing (a) in his individual capacity and (b) in his capacity as a putative

plaintiff class representative on behalf of all other similarly situated federal student loan

borrowers under the Federal Family Education Program - - i.e. Plaintiff is suing as a

putative plaintiff class representative on behalf of all other similarly situated FFEL

Borrowers, whose FFEL federal student loan contracts are owned and/or held by

Defendants (and other Wall Street securitization trusts and commercial banks) and

guaranteed by DOE (to wit: the DOE-Guaranteed FFEL Loan Contracts), and from

whom Defendants (and other Wall Street securitization trusts and commercial banks)

have continued to collect federal student loan payments during the covid national

emergency, notwithstanding the statutory parity provisions in the HEA mandating that

all federal student loans under the FFEL Loan Program and the Direct Loan Program

shall have the same terms, conditions, and benefits, and notwithstanding the Trump

Administration and the Biden Administration having both provided "payment pause"

benefits and "no-interest accrual" benefits during the covid national emergency to federal

student loan borrowers (since March 13, 2020) to all Direct Loan Program Borrowers and

all FFEL Loan Program Borrowers whose federal student loan contracts are owned/held

by DOE ("Plaintiff Class").

44.     Pursuant to FRCP 23(a)(1), the Plaintiff Class is so numerous that joinder of all

similarly situated members is impracticable because, upon information and belief, there

are at least five million similarly situated members of the Plaintiff Class.  The identity of

these similarly situated members of the Plaintiff Class are ascertainable from, inter alia,

the federal student loan records maintained by Defendants (and other Wall Street securitization trusts and commercial banks) and/or DOE records.  Upon information and belief, almost all of these similarly situated members of the Plaintiff Class lack the means necessary to pursue their similarly situated claims in a cost-effective and substantively successful manner.

45.     Pursuant to FRCP 23(a)(2), there are questions of law or fact common to the Plaintiff Class, including, but not limited to, (a) whether the statutory parity provisions in the HEA mandate that all federal student loans under the FFEL Loan Program and the Direct Loan Program shall have the same terms, conditions, and benefits - - and, if so, whether the same benefits that must be accorded to all federal student loans under the FFEL Loan Program and the Direct Loan Program include the covid national emergency benefits, in the form of "payment pause" benefits and "no-intertest accrual" benefits, that have been provided by the Trump Administration and the Biden Administration, during the covid national emergency (since March 13, 2020), to all federal student loan borrowers under the Direct Loan Program and FFEL Loan Program whose federal student loan contracts are owned/held by DOE - - and, if so, whether these same "payment pause" benefits and "no-interest accrual" benefits that both the Trump Administration and Biden Administration have provided, during the covid national emergency, to all federal student loan borrowers whose federal student loan contracts are owned/held by DOE (such as the Trump Administration and the Biden Administration having provided these same "payment pause" benefits and "no-interest accrual" benefits, during the covid national emergency, to all DOE-Held FFEL Loan Contracts) must also be accorded, under the statutory parity provisions in the HEA, to federal student loan

borrowers whose federal student loan contracts are owned and/or held by Defendants (and other Wall Street securitization trusts and commercial banks) and guaranteed by DOE (i.e. the DOE-Guaranteed FFEL Loan Contracts) and (b) whether this violation by Defendants (and other Wall Street securitization trusts and commercial banks) of this federally mandated standard of conduct, codified in the statutory parity provisions in the HEA, means that Defendants (and other Wall Street securitization trusts and commercial banks) are liable for, inter alia, breach of the DOE-Guaranteed FFEL Loan Contracts, and improper debt collection practices under the Fair Debt Collection Practices Act.

46.     Pursuant to FRCP 23(a)(3), and based upon the reasons set forth in the preceding paragraph (and otherwise as set forth herein), the claims and causes of action of Plaintiff, as a putative plaintiff class representative, are typical of (if not wholly the same as) the claims and causes of action of the members of the Plaintiff Class.

47.     Pursuant to FRCP 23(a)(4), Plaintiff, as a putative class representative, and the undersigned law firms as counsel for Plaintiff and the putative Plaintiff Class, will fairly and adequately protect the interests of the Plaintiff Class.  Both Plaintiff, and the undersigned law firms as counsel for Plaintiff and the putative Plaintiff Class, will vigorously and competently enforce the rights and interests of Plaintiff and the putative Plaintiff Class.  Neither Plaintiff, nor the undersigned law firms as counsel for Plaintiff and the putative Plaintiff Class, have any conflict of interest that would impede or undermine their ability to vigorously and competently enforce the rights and interests of Plaintiff and the putative Plaintiff Class.

48.     Pursuant to FRCP 23(b)(1)(A), and based upon the reasons set forth in the

preceding paragraphs herein, a Plaintiff Class should be allowed to maintain this case as a plaintiff class action because the prosecution of separate actions by or against individual members of the Plaintiff Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Plaintiff Class which would establish incompatible standards of conduct for any party, such as Defendants (and other Wall Street securitization trusts and commercial banks on whose behalf Defendants may act as a defendant class representative), that may choose to oppose the certification of a Plaintiff Class.

49.     Pursuant to FRCP 23(b)(2), and based upon the reasons set forth in the preceding paragraphs herein, a Plaintiff Class should be allowed to maintain this case as a plaintiff class action because the Defendants (and other Wall Street securitization trusts and commercial banks on whose behalf Defendants may act as a defendant class representative) have acted or refused to act on grounds generally applicable to the Plaintiff Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Plaintiff Class as a whole.

50.     Pursuant to FRCP 23(b)(3), and based upon the reasons set forth in the preceding paragraphs herein, a Plaintiff Class should be allowed to maintain this case as a plaintiff class action because the questions of law or fact common to the members of the Plaintiff Class predominate over any questions affecting only individual members of the Plaintiff Class, and a Plaintiff Class action is superior to other available methods for the fair and efficient adjudication of the causes of action and controversies set forth herein.

**E.  Defendant Class Allegations**.

51.     Pursuant to FRCP 23, Defendant DB Trust, a Wall Street securitization trust, is being sued in (a) its individual capacity and (b) in its capacity as a putative defendant class representative on behalf of all other similarly situated owners and/or holders of legal title to, or beneficial interests in, federal student loans under the Federal Family Education Program - - i.e. DB Trust is being sued as a putative defendant class representative on behalf of all other owners and/or holders of legal title to, or beneficial interests in, all FFEL federal student loan contracts guaranteed by the DOE (to wit: the DOE-Guaranteed FFEL Loan Contracts), and from whom DB Trust (and other Wall Street securitization trusts, commercial banks, and other non-federal government entities) have continued to collect federal student loan payments during the covid national emergency, notwithstanding the statutory parity provisions in the HEA mandating that all federal student loans under the FFEL Loan Program and the Direct Loan Program shall have the same terms, conditions, and benefits, and notwithstanding the Trump Administration and the Biden Administration having both provided "payment pause" benefits and "no-interest accrual" benefits during the covid national emergency to federal student loan borrowers (since March 13, 2020) to all Direct Loan Program Borrowers and all FFEL Loan Program Borrowers whose federal student loan contracts are owned/held by DOE ("Defendant FFEL-Loan Owner Class").

52.     Pursuant to FRCP 23, Defendant DB Trustee, an "eligible lender trustee" of the DB Trust as required by the HEA, is being sued in (a) its individual capacity and (b) in its capacity as both an additional putative defendant class representative on behalf of a Defendant FFEL-Loan Owner Class, as well as in its capacity as a putative defendant

class representative as a trustee on behalf of all trustees of student loan asset-backed securitization trusts that are owners and/or holders of legal title to, or beneficial interests in, federal student loans under the Federal Family Education Loan Program - - i.e. DB Trustee is being sued as a putative defendant class representative on behalf of all other trustees of student loan asset-backed securitization trusts that are owners and/or holders of legal title to, or beneficial interests in, all FFEL federal student loan contracts guaranteed by the DOE (to wit: the DOE-Guaranteed FFEL Loan Contracts), and from whom DB Trustee (and other Wall Street securitization trusts, commercial banks, and other non-federal government entities) have continued to collect federal student loan payments during the covid national emergency, notwithstanding the statutory parity provisions in the HEA mandating that all federal student loans under the FFEL Loan Program and the Direct Loan Program shall have the same terms, conditions, and benefits, and notwithstanding the Trump Administration and the Biden Administration having both provided "payment pause" benefits and "no-interest accrual" benefits during the covid national emergency to federal student loan borrowers (since March 13, 2020) to all Direct Loan Program Borrowers and all FFEL Loan Program Borrowers whose federal student loan contracts are owned/held by DOE ("Defendant FFEL-Loan Trustee Class").

53.     Pursuant to FRCP 23, Defendant DBNTC is being sued in (a) in its individual capacity and (b) in its capacity as both an additional putative defendant class representative on behalf of a Defendant FFEL-Loan Owner Class, as well as in its capacity as a putative defendant class representative as an administrator for and/or agent of student loan asset-backed securitization trusts (and/or their trustees) in the collection of

federal student loans under the Federal Family Education Loan Program - - i.e. DBNTC is being sued as a putative defendant class representative on behalf of all other administrators for and/or agents of student loan asset-backed securitization trusts that are owners and/or holders of legal title to, or beneficial interests in, all FFEL federal student loan contracts guaranteed by the DOE (to wit: the DOE-Guaranteed FFEL Loan Contracts), and from whom DBNTC (and other Wall Street securitization trusts, commercial banks, and other non-federal government entities) have continued to collect federal student loan payments during the covid national emergency, notwithstanding the statutory parity provisions in the HEA mandating that all federal student loans under the FFEL Loan Program and the Direct Loan Program shall have the same terms, conditions, and benefits, and notwithstanding the Trump Administration and the Biden Administration having both provided "payment pause" benefits and "no-interest accrual" benefits during the covid national emergency to federal student loan borrowers (since March 13, 2020) to all Direct Loan Program Borrowers and all FFEL Loan Program Borrowers whose federal student loan contracts are owned/held by DOE ("Defendant FFEL-Loan Administrator-Agent Class").

54.     Pursuant to FRCP 23(a)(1), the Defendant FFEL-Loan Owner Class and/or the Defendant FFEL-Loan Trustee Class and/or the Defendant FFEL-Loan Administrator-Agent Class (individually or collectively, as the context may indicate or suggest, the "Defendant Class") is so numerous that joinder of all similarly situated members is impracticable because, upon information and belief, there are more than one thousand similarly situated members of the Defendant Class.  The identity of these similarly situated members of the Defendant Class are ascertainable from, inter alia, the federal

student loan records maintained by the DOE.

55.     Pursuant to FRCP 23(a)(2), there are questions of law or fact common to the

Defendant Class, including, but not limited to, (a) whether the statutory parity provisions

in the HEA mandate that all federal student loans under the FFEL Loan Program and the

Direct Loan Program shall have the same terms, conditions, and benefits - - and, if so,

whether the same benefits that must be accorded to all federal student loans under the

FFEL Loan Program and the Direct Loan Program include the covid national emergency

benefits, in the form of "payment pause" benefits and "no-intertest accrual" benefits, that

have been provided by the Trump Administration and the Biden Administration, during

the covid national emergency (since March 13, 2020), to all federal student loan

borrowers under the Direct Loan Program and FFEL Loan Program whose federal

student loan contracts are owned/held by DOE - - and, if so, whether these same

"payment pause" benefits and "no-interest accrual" benefits that both the Trump

Administration and Biden Administration have provided, during the covid national

emergency, to all federal student loan borrowers whose federal student loan contracts are

owned/held by DOE (such as the Trump Administration and the Biden Administration

having provided these same "payment pause" benefits and "no-interest accrual" benefits,

during the covid national emergency, to all DOE-Held FFEL Loan Contracts) must also

be accorded, under the statutory parity provisions in the HEA, to federal student loan

borrowers whose federal student loan contracts are owned and/or held by the Defendant

Class and guaranteed by DOE (i.e. the DOE-Guaranteed FFEL Loan Contracts) and

(b) whether this violation by the Defendant Class of this this federally mandated standard

of conduct, codified in the statutory parity provisions in the HEA, means that the

Defendant Class is liable for, inter alia, breach of the DOE-Guaranteed FFEL Loan

Contracts, and improper debt collection practices under the Fair Debt Collection Practices

Act

56.     Pursuant to FRCP 23(a)(3), and based upon the reasons set forth in the preceding

paragraph (and otherwise as set forth herein), the defenses of the DB Trust and/or the DB

Trustee and/or DBNTC, as a putative defendant class representative, are typical of (if not

wholly the same as) the defenses of the members of the Defendant Class.

57.     Pursuant to FRCP 23(a)(4), the DB Trust and/or the DB Trustee and/or DBNTC,

as a defendant class representative, and the top-notch litigation counsel to be retained

herein for the DB Trust and/or the DB Trustee and/or DBNTC, will fairly and adequately

protect the interests of the Defendant Class.  Both the DB Trust and/or the DB Trustee

and/or DBNTC, and the top-notch litigation counsel to be retained herein for the DB

Trust and/or the DB Trustee and/or the DBNTC, will each have the financial motivation

and extensive means, on behalf of their own interests and the interests of the Defendant

Class, to vigorously and competently defend against the asserted rights and interests of

Plaintiff and the putative Plaintiff Class.  Neither the DB Trust and/or the DB Trustee

and/or DBNTC, nor the top-notch litigation counsel to be retained herein for the DB

Trust and/or the DB Trustee and/or DBNTC will have any conflict of interest that would

impede or undermine their ability to vigorously and competently defend against the

asserted rights and interests of Plaintiff and the putative Plaintiff Class.

58.     Pursuant to FRCP 23(b)(1)(A), and based upon the reasons set forth in the

preceding paragraphs herein, a Defendant Class should be allowed to defend against this

case, as a Plaintiff Class action, because the prosecution of separate actions by or against

individual members of the Defendant Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Defendant Class which would establish incompatible standards of conduct for any party, such as other Wall Street securitization trusts and commercial banks on whose behalf Defendants may act as a defendant class representative, that may choose to oppose the certification of a Defendant Class.

59.     Pursuant to FRCP 23(b)(2), and based upon the reasons set forth in the preceding paragraphs herein, a Defendant Class should be allowed to defend against this case, as a Plaintiff Class action, because all members of the Defendant Class have acted or refused to act on grounds generally applicable to the Defendant Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Defendant Class as a whole.

60.     Pursuant to FRCP 23(b)(3), and based upon the reasons set forth in the preceding paragraphs herein, a Defendant Class should be allowed to defend against this case, as a Plaintiff Class action, because the questions of law or fact common to the members of the Defendant Class predominate over any questions affecting only individual members of the Defendant Class, and certifying a Defendant Class to defend against this Plaintiff Class action is superior to other available methods for the fair and efficient adjudication of the causes of action, defenses, and controversies set forth herein.

## CLAIMS FOR RELIEF

**First Claim For Relief: Declaratory Judgment**
**Plaintiff, In His Individual Capacity, And In His Capacity As A**
**Plaintiff Class Representative For A Putative Plaintiff Class, Against**
**Defendants, In Their Individual Capacity, And In Their Capacity As**
**A Defendant Class Representative For A Putative Defendant Class**

61.     Plaintiff, in his individual capacity, and in his capacity as a plaintiff class

representative for a putative Plaintiff Class (whether individually or collectively, as the

context may indicate or suggest, "Plaintiff" and/or "Plaintiff Class"), hereby incorporates

and repeats all allegations set forth above, as if repeated here in their entirety, against

Defendants, in their individual capacity, and in their capacity as a defendant class

representative for a putative Defendant Class (whether individually or collectively, as the

context may indicate or suggest, "Defendants" and/or "Defendant Class").

62.     Pursuant to 28 U.S.C. 2201, Plaintiff and/or Plaintiff Class respectfully request

the issuance of a Declaratory Judgment declaring their rights, and declaring the duties

and obligations of the Defendants and/or the Defendant Class, regarding the nature, scope

and effect of the statutory parity provisions in the HEA as applied to all DOE-Guaranteed

FFEL Loan Contracts, pursuant to which Plaintiff and/or Plaintiff Class are federal

student loan borrowers, and Defendants and/or Defendant Class are either the owners

and/or holders of legal title to, or beneficial interests in, such DOE-Guaranteed FFEL

Loan Contracts (or such Defendants and/or the Defendant Class otherwise act as the

trustees for and/or the administrators of and/or the agents of student loan asset-backed

securitization trusts that are owners and/or holders of legal title to, or beneficial interests

in, federal student loans under the Federal Family Education Loan Program), including

but not limited to declaring the following rights, duties, and obligations of the parties:

(a) The statutory parity provisions in the HEA mandate that all federal student loans under the FFEL Loan Program and the Direct Loan Program shall have the same terms, conditions, and benefits - - such that (i) the same benefits that must be accorded to all federal student loans under the FFEL Loan Program and the Direct Loan Program include the covid national emergency benefits, in the form of "payment pause" benefits and "no-intertest accrual" benefits, that have been provided by the Trump Administration and the Biden Administration, during the covid national emergency (since March 13, 2020), to all federal student loan borrowers under the Direct Loan Program and FFEL Loan Program whose federal student loan contracts are owned/held by DOE; and, therefore,

(b) These same "payment pause" benefits and "no-interest accrual" benefits that both the Trump Administration and Biden Administration have provided, during the covid national emergency, to all federal student loan borrowers whose federal student loan contracts are owned/held by DOE (such as the Trump Administration and the Biden Administration having provided these same "payment pause" benefits and "no-interest accrual" benefits, during the covid national emergency, to all DOE-Held FFEL Loan Contracts) must also be accorded, under the statutory parity provisions in the HEA, to federal student loan borrowers whose federal student loan contracts are owned and/or held by the Defendant Class and guaranteed by DOE (i.e. the DOE-Guaranteed FFEL Loan Contracts); and, therefore,

(c)  Unlike the Trump Administration and the Biden Administration which have both provided the "payment pause" benefits and "no-interest accrual" benefits to federal student loan borrowers since March 13, 2020 - - such as providing such "payment

pause" benefits and "no-interest accrual" benefits to FFEL Borrowers whose federal student loan contracts are owned/held by DOE - - Defendants and/or Defendant Class (comprising Wall Street securitization trusts, commercial banks, and other non-federal government entities) have violated the federally mandated parity provisions in the HEA by not providing these same "payment pause" benefits and "no-interest accrual" benefits to FFEL Borrowers whose federal student loan contracts are owned/held by Defendants and/or Defendant Class (comprising Wall Street securitization trusts, commercial banks, and other non-federal government entities) and guaranteed by DOE (i.e. the DOE-Guaranteed FFEL Loan Contracts); and

(d)      Congress never intended its federally mandated parity provisions in the HEA to be interpreted in a manner where, during a national emergency like Covid, **the federal government, acting on behalf of American taxpayers, receives no payment on federal student loans owned/held by DOE** - - but Defendants and/or Defendant Class (comprising Wall Street securitization trusts, commercial banks, and other non-federal government entities) are "exempted" from the national emergency and continue to receive, during the national emergency, **billions of dollars on federal student loans guaranteed by DOE (i.e. the DOE-Guaranteed FFEL Loan Contracts)**.

**Second Claim For Relief: Breach Of Contract**
**Plaintiff, In His Individual Capacity, And In His Capacity As A**
**Plaintiff Class Representative For A Putative Plaintiff Class, Against**
**Defendants, In Their Individual Capacity, And In Their Capacity As**
**A Defendant Class Representative For A Putative Defendant Class**

63.     Plaintiff and/or Plaintiff Class hereby incorporate and repeat all allegations set

forth above, as if repeated here in their entirety, against Defendants and/or Defendant

Class.

64.     All DOE-Guaranteed FFEL Loan Contracts between Plaintiff and/or Plaintiff

Class (as federal student loan borrowers under the FFEL Loan Program) and Defendants

and/or Defendant Class (as the owners and/or holders of legal title to, or beneficial

interests in, such DOE-Guaranteed FFEL Loan Contracts) are governed by a DOE-

approved, standardized, Master Promissory Note that contains a "Governing Law"

clause that (a) incorporates all statutory provisions in the HEA as contractually

enforceable terms in, and contractually enforceable provisions of, such DOE-Guaranteed

FFEL Loan Contracts and (b) explains that "applicable state law," which authorizes a

federal student loan borrower to use a state-law breach of contract claim to obtain relief

involving a federal student lender's violation of a standard of conduct codified in the

HEA, "provide[s] for certain borrower rights, remedies, and defenses in addition to those

stated in this MPN [Master Promissory Note for all DOE-Guaranteed FFEL Loan

Contracts]."

65.     The mandatory statutory parity provisions in the HEA - - directing that all federal

student loans under the Direct Loan Program and the FFEL Loan Program shall have the

same terms, conditions, and benefits - - do not constitute "disclosure requirements" under

the limited preemption provision codified in the HEA at 20 U.S.C. 1098g and, therefore,

state-law relief for a state-law breach of contract claim, based upon the allegations set forth herein, by Plaintiff and/or Plaintiff Class against Defendants and/or Defendant Class, is (a) not preempted by the limited preemption provision codified in the HEA at 20 U.S.C. 1098 and (b) not barred merely because the HEA itself does not expressly contain a federally-created private right of action therein.  All federal appellate courts that have addressed these issues have determined that federal student loan borrowers are entitled to pursue state-law relief for a state-law breach of contract claim, based upon a federal student lender's violation of a standard of conduct codified in the HEA that has been incorporated into the federal student loan contract, so long as the incorporated HEA statutory provision does not fall within the limited preemption provision for "disclosure requirements" in 20 U.S.C. 1098g.  See *Bible v. United Student Aid Funds, Inc.,* 799 F.3d 633 (7th Cir. 2015); *Lawson-Ross v. Great Lakes Higher Education Corp*., 955 F.3d 908 (11th Cir. 2020); *Nelson v. Great Lakes Educational Loan Services, Inc.,* 928 F.3d 639 (7th Cir. 2019); *Commonwealth of Pennsylvania v. Navient Corp*., 967 F.3d 273 (3d Cir. 2020); *College Loan Corp. v. SLM Corp*., 396 F.3d 588 (4th Cir. 2005).

66.      Defendants and/or Defendant Class (as owners and/or holders of the DOE-Guaranteed FFEL Loan Contracts) have breached their DOE-Guaranteed FFEL Loan Contracts with Plaintiff and/or Plaintiff Class (as federal student loan borrowers under the DOE-Guaranteed FFEL Loan Contracts) because Defendants and/or Defendant Class have violated the statutory parity provisions in the HEA - - which have been incorporated into the DOE-Guaranteed FFEL Loan Contracts - - by the actions of Defendants and/or Defendant Class in continuing to collect, upon information and belief, billions of dollars in federal student loan payments, during the covid national emergency,

from Plaintiff and/or Plaintiff Class, notwithstanding the statutory parity provisions in the HEA mandating that all federal student loans under the FFEL Loan Program and the Direct Loan Program shall have the same terms, conditions, and benefits, and notwithstanding the Trump Administration and the Biden Administration having both provided "payment pause" benefits and "no-interest accrual" benefits during the covid national emergency to all federal student loan borrowers (since March 13, 2020) under the Direct Loan Program and the FFEL Loan Program whose federal student loan contracts are owned and/or held by the DOE (such as the DOE-Held FFEL Loan Contracts).

67.     The above-referenced breaches of contract by Defendants and/or Defendant Class have caused harm, injury, and damages to Plaintiff and/or Plaintiff Class and, by virtue thereof, Plaintiff and/or Plaintiff Class are entitled to recover all federal student loan payments they have made under their DOE-Guaranteed FFEL Loan Contracts to Defendant and/or Defendant Class, during the covid national emergency (since March 13, 2020), in an aggregate sum that, upon information and belief, comprises at least several billions of dollars to date.

**<u>Third Claim For Relief: Violation Of Federal Fair Debt Collection Practices Act</u>**
**Plaintiff, In His Individual Capacity, And In His Capacity As A**
**Plaintiff Class Representative For A Putative Plaintiff Class, Against**
**Defendants, In Their Individual Capacity, And In Their Capacity As**
**A Defendant Class Representative For A Putative Defendant Class**

68.     Plaintiff and/or Plaintiff Class hereby incorporate and repeat all allegations set

forth above, as if repeated here in their entirety, against Defendants and/or Defendant

Class.

69.     Defendants DB Trust and/or DB Trustee, whether in their individual capacity

and/or in their capacity as a defendant class representative for a putative Defendant Class

of owners and/or holders of legal title to, or beneficial interests in, DOE-Guaranteed

FFEL Loan Contracts, are "debt collectors" within the meaning of 15 U.S.C. 1692a(6)

because they use the instrumentalities of interstate commerce as to which they are

engaged in an interstate "business the principal purpose of which is the collection of any

debts" and/or, in any event, "in the process of collecting [their] own debts" they use a

"name other than [their] own which would indicate that a third person is collecting or

attempting to collect such debts."

70.     Plaintiff and/or the Plaintiff Class are a "consumer" within the meaning of 15

U.S.C. 1692a(3), and federal student loan payments are "debts" within the meaning of

15 U.S.C. 1692a(5), because they are "an obligation or alleged obligation" to pay money

for "personal, family, or household purposes."

71.     A debt collector violates 15 U.S.C. 1692(e)(2)(A) whenever a debt collector

"use[s] any false, deceptive, or misleading representation or means in connection with the

collection of any debt," such as a "false representation of the character, amount, or legal

status of any debt."

72.     A debt collector violates 15 U.S.C. 1692(e)(2)(B) whenever a debt collector "use[s] any false, deceptive, or misleading representation or means in connection with the collection of any debt," such as a "false representation of any services rendered or compensation which may lawfully be received by any debt collector for the collection of a debt."

73.     A debt collector violates 15 U.S.C. 1692(e)(5) whenever a debt collector "use[s] any false, deceptive, or misleading representation or means in connection with the collection of any debt," such as a "threat to take any action that cannot legally be taken."

74.     A debt collector violates 15 U.S.C. 1692(e)(10) whenever a debt collector "use[s] any false, deceptive, or misleading representation or means in connection with the collection of any debt," such as the "use of any false representation or deceptive means to collect or attempt to collect any debt."

75.     A debt collector violates 15 U.S.C. 1692f(1) whenever a debt collector "use[s] unfair or unconscionable means to collect or attempt to collect any debt," such as the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

76.     Defendants DB Trust and/or DB Trustee and/or Defendant Class, as a debt collector, have violated all (or one or more) of the following provisions in the federal Fair Debt Collection Practices Act, see 15 U.S.C. 1692(e)(2)(A) and/or 15 U.S.C. 1692(e)(2)(B) and/or 15 U.S.C. 1692(e)(5) and/or 15 U.S.C. 1692(e)(10) and/or 15 U.S.C. 1692f(1), because of their actions in continuing to collect, upon information and belief, billions of dollars in federal student loan payments, during the covid national

emergency, from Plaintiff and/or Plaintiff Class, notwithstanding the statutory parity provisions in the HEA mandating that all federal student loans under the FFEL Loan Program and the Direct Loan Program shall have the same terms, conditions, and benefits, and notwithstanding the Trump Administration and the Biden Administration having both provided "payment pause" benefits and "no-interest accrual" benefits during the covid national emergency to all federal student loan borrowers (since March 13, 2020) under the Direct Loan Program and the FFEL Loan Program whose federal student loan contracts are owned and/or held by the DOE (such as the DOE-Held FFEL Loan Contracts).

77.     The above-referenced violations of the federal Fair Debt Collection Practices Act by Defendants DB Trust and/or DB Trustee and/or Defendant Class, as a debt collector, have caused harm, injury, and damages to Plaintiff and/or Plaintiff Class and, by virtue thereof, Plaintiff and/or Plaintiff Class are entitled to recover all federal student loan payments they have made under their DOE-Guaranteed FFEL Loan Contracts, during not less than the one-year period preceding the commencement of this action, in an aggregate sum that, upon information and belief, comprises at least several billions of dollars.

78.     Pursuant to 15 U.S.C. 1692k, Plaintiff and/or Plaintiff Class are entitled to recover their actual damages (including emotional distress damages), attorney's fees, and statutory damages from Defendants DB Trust and/or DB Trustee and/or Defendant Class.

**WHEREFORE**, based upon the foregoing allegations, Plaintiff and/or Plaintiff Class respectfully request that the Court (a) grant the relief requested on the claims for relief herein by Plaintiff and/or Plaintiff Class against Defendants and/or Defendant Class and (b) award such other relief as the Court deems just and proper herein.

Dated: September 5, 2022
New York, New York

<div style="margin-left:auto;">

Respectfully submitted,

Law Offices of Michael B. Wolk, P.C.

By: ____/s/ Michael B. Wolk_____
Michael B. Wolk
155 East 55th Street, Suite 300B
New York, New York 10022
Tel: 917-238-0576
Email: michael.wolk@wolkgroup.com

-and-

Smith Law Group LLP

By: _____/s/ Austin C. Smith_____
Austin C. Smith
99 Wall Street, No. 426
New York, New York 10005
Tel: 917-992-2121
Email: austin@acsmithlawgroup.com

Counsel for Plaintiff and Plaintiff Class

</div>